UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS G.,[1] | ) |
|                 Plaintiff, | ) No. 22 CV 5135 |
| v. | ) Magistrate Judge Young B. Kim |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
|                 Defendant. | ) June 17, 2025 |

**MEMORANDUM OPINION and ORDER**

Douglas G. seeks social security income benefits ("SSI") and disability insurance benefits ("DIB") asserting that he is disabled by complications following two strokes, as well as obesity, anxiety, and depression, among other conditions. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Douglas's remand request is granted:

**Procedural History**

Douglas filed his SSI and DIB applications in January 2017 claiming disability onset on December 1, 2016. (Administrative Record ("A.R.") 16.) After his applications were denied initially and upon reconsideration at the administrative level, (id. at 75-104, 107-43), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 174-178, 195). Douglas appeared with his

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Douglas's first name and last initial in this opinion to protect his privacy to the extent possible.

attorney at a May 2018 hearing at which he and a vocational expert ("VE") testified. (Id. at 34-73.) The ALJ concluded in October 2018 that Douglas is not disabled. (Id. at 28.) The Appeals Council denied Douglas's request for review, (id. at 1-6.) after which Douglas filed a lawsuit seeking judicial review ("First Lawsuit"), and this court remanded his case in 2021 for another hearing. *Douglas G. v. Kijakazi*, No 19 CV 7033, 2021 WL 3849637 (N.D. Ill. Aug. 27, 2021). Douglas's second hearing before a new ALJ took place in April 2022. Douglas again appeared with an attorney, and he and a VE testified. (A.R. 907-56.) The new ALJ also found Douglas not disabled. (Id. at 899.) Douglas filed this second lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 8).

## Analysis

Douglas argues that the new ALJ: (1) violated the law of the case doctrine concerning his alleged need for daily reminders; (2) erred when assessing his subjective symptoms; and (3) failed to account for all deficits he suffers from in the area of concentration, persistence, or pace ("CPP") and blackouts when assessing his residual functional capacity ("RFC"). (See generally R. 17, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting

its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Viewing the arguments and record under this standard, remand is warranted here.

**A.    Law of the Case Doctrine**

Douglas first argues that the ALJ violated the law of the case doctrine by failing to consider his need for daily reminders as this court directed in the First Lawsuit. (R. 17, Pl.'s Mem. at 4-6.) But that doctrine applies only if the court decides an issue on the merits. *See Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (holding that an "[a]ctual decision of an issue is required to establish the law of the case"). And as Douglas acknowledges, in the First Lawsuit this court did not decide the merits of this issue—it merely directed the ALJ to consider whether Douglas needs daily reminders. (See R. 17, Pl.'s Mem. at 4 (noting this court's directive to "address whether the record supports a need for daily reminders" (quoting *Douglas G.*, 2021 WL 3849637, at *6)); *see also Juozas v. Kijakazi*, No. 20 CV 3692, 2023 WL 2646735, at *4 (N.D. Ill. March 27, 2023) (holding no law of the case violation where

3

court "did not make any factual findings as to . . . limitations or impairments in its remand order").

Douglas's argument that the ALJ ignored this court's directive to consider the alleged need for reminders also fails. Douglas says the ALJ "did not discuss the issue at all," (R. 17, Pl.'s Mem. at 4), or "attempt to make any connection between [certain activities of daily living] and [Douglas's] ability . . . to perform tasks without reminders" in a work environment, (R. 22, Pl.'s Reply at 2). But the government correctly points out that the ALJ acknowledged the need to address the reminders issue "in the very first section of [her] decision." (R. 21, Govt.'s Mem. at 3 (citing A.R. 871).) And in finding Douglas moderately limited in the paragraph B criteria of understanding, remembering, and applying information the ALJ noted Douglas's alleged "problems remembering information at times," yet concluded that the "record as a whole does not support a more restrictive limitation." (Id. at 878.)

In support of this conclusion, the ALJ pointed to, among other activities, Douglas's fishing, working on the house, grocery shopping, preparing meals, taking medications, and paying bills, and reasoned that Douglas's regular driving showed he was "clearly . . . able to recall driving routes, rules of the road and how to operate a motor vehicle." (Id. at 878-79.) The ALJ's RFC assessment also recounted Douglas's alleged memory difficulties but pointed out that he worked five days a week as a school bus monitor, that he regularly participated in other activities including volunteering at a nursing home, landscaping, painting, and regular attendance at

4

church, that he was independent in his daily living activities, and that his memory had improved with treatment. (Id. at 882-83, 886, 889, 891-92.)

The ALJ ultimately assessed an RFC with various limitations "to accommodate [Douglas's] . . . alleged memory and concentration problems," but did not mention reminders. (A.R. 894-95.) While Douglas takes issue with this, no doctor opinion calls for reminders and none of the evidence Douglas cites that post-dates his first hearing would direct a different result. (See, e.g., id. at 1161-65, 1173, 1177, 1179, 1181, 1184-86, 1202, 1350, 1357, 1405, 1688.) Further, the objective evidence Douglas points to pre-dating the first hearing was collected before his post-stroke improvement with various therapies and considered by the ALJ in any case. (See, e.g., id. at 560, 564-65, 575.) Despite Douglas's suggestion otherwise, it also is not problematic that the ALJ posed a hypothetical to the VE that included daily reminders. (R. 17, Pl.'s Mem. at 4); *see Kathleeen C. v. Saul*, No. 19 CV 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020) (that "an ALJ considers adding a mental limitation to an RFC does not establish that such a limitation is ultimately warranted").

While the ALJ could have tied the need (or not) for reminders to the RFC analysis more explicitly, she did enough—by accounting for the evidence of Douglas's memory issues more generally—to assure the court that she considered but did not find it necessary to accommodate beyond what the RFC provides. Substantial evidence supports that determination.

5

**B. Subjective Symptom Assessment**

Douglas argues that the ALJ erred when assessing his subjective symptoms by: (1) failing to explain how his daily living activities contradict his symptom allegations; (2) mischaracterizing psychiatric evidence; and (3) disregarding his frequent absences from his part-time job as a school bus monitor. (R. 17, Pl.'s Mem. at 11-14.) An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not disturb a symptom evaluation that is logically based on specific findings and evidence. *See Murphy*, 759 F.3d at 815. The ALJ's assessment here meets that standard.

Indeed, in concluding that Douglas's statements concerning the "intensity, persistence and limiting effects" of his symptoms were "not entirely consistent" with the medical and other record evidence, the ALJ considered the objective evidence in relative detail, along with Douglas's self-reports, treatment, medication, and daily activities. (See A.R. 883-897.) For example, the ALJ noted that despite Douglas's testimony that since 2018 his memory issues, problems walking and with mobility, and condition more generally had worsened, (id. at 883), the record reflects that Douglas's physical and mental state throughout the relevant period had largely

6

improved, (see, e.g., id. at 878 & 886 (citing id. at 572 & 618 (January and February 2017 speech language therapy notes indicating memory improvement)), 887 (citing id. at 1416 (March 2017 doctor note indicating improvement in CVA[2] symptoms)), 888 (citing id. at 1402 (July 2018 doctor note reflecting Douglas's report that he was "doing well" and neurology referral was "not necessary")), 889 (noting "little to no residuals" from CVAs and that Douglas met "all or virtually all physical therapy, occupational therapy and speech therapy goals" and "reported no longer needing them"), 892 (citing id. at 774-75 (June 2017 progress notes indicating Douglas's depression is "mild" and no longer meets criteria for major depressive disorder)), 892-93 (noting that Douglas reported experiencing depression, anxiety, decreased concentration and more in treatment records from April 2018 through January 2020, but that exams showed no deficits, and his depression and anxiety were described as "stable")). The ALJ also noted that contrary to Douglas's testimony, "there is no documentation of any mobility issues." (Id. at 883.)

In addition to these inconsistencies, the ALJ also noted many largely normal physical and mental examinations, (see, e.g., id. at 897 (citing id. at 708, 801, 1151-1203, 1429, 1454, 1456, 1688)), and considered that Douglas's symptoms were treated effectively with medication, (see, e.g., id. at 892 (noting improved mood with medication adjustment)), 893 (noting Douglas reported no psychiatric symptoms following medication adjustment and normal exam)), his engagement in a range of

---

[2] The term "CVA" stands for "cerebrovascular accident," or stroke. *See* Aunali S. Khaku & Prasanna Tadi, Cerebrovascular Disease, StatPearls (August 7, 2023), https://www.ncbi.nlm.nih.gov/books/NBK430927/ (last visited June 13, 2025).

activities despite his limitations—including part-time work as a school bus monitor, driving, attending church and volunteering at a nursing home—and his ability to independently take medication, pay bills, cook, clean, and attend doctor and therapy appointments, (id. at 882, 884, 886-87, 891-92, 895, 897).

Nevertheless, Douglas asserts that the ALJ did not explain why she found his activities inconsistent with his complaints of anxiety, depression, suicide attempts, and sleep difficulties. (R. 17, Pl.'s Mem. at 11-12.) But as the ALJ notes, the suicide attempt Douglas refers to predates his alleged onset date, (R. 885, 890, 893), and the court finds Douglas's varied and extensive activities largely speak for themselves. But even assuming the ALJ failed to sufficiently explain the inconsistencies between Douglas's activities and allegations, an ALJ's subjective symptom assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 Fed. Appx. 951, 961 (7th Cir. 2013)). Having noted numerous inconsistencies between Douglas's allegations and the record evidence, his treatment, and medication, the ALJ's analysis clears that low bar here. *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons [for disbelieving a claimant] must be valid as long as *enough* of them are").

Douglas also complains that the ALJ mischaracterized several mental status examinations by noting they were normal "except" for certain abnormal findings, and in so doing unfairly downplayed the abnormalities. (R. 17, Pl.'s Mem. at 12-13.) But Douglas acknowledges that the ALJ addressed findings that both support and cut

8

against his claim. (Id.) His complaint thus amounts to an improper request for this court to reweigh evidence. *Deborah M.*, 994 F.3d at 788.

Douglas next asserts that the ALJ improperly downplayed his absences from his part-time school bus monitor job and notes VE testimony that the jobs ultimately identified as suitable other work would permit few absences. (R. 17, Pl.'s Mem. at 13-14 (citing A.R. 952-53).) Yet Douglas testified that the stress of overseeing children was the issue with his bus monitor position, (A.R. 942-44), and the ALJ's RFC allows for only lower-stress jobs requiring simple decision-making, no fast-paced production, and prohibiting frequent or prolonged communication, (id. at 881). In the end, the ALJ accounted for many of Douglas's symptom allegations, but she doubted the extent of those symptoms based on evidence that is inconsistent with his allegations. The ALJ's assessment was not "patently wrong."

**C.     RFC Assessment**

Douglas asserts that the ALJ erred by failing to account for all his CPP limitations and blackouts in the RFC assessment. An RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's limitations, including those that are not severe, in developing the RFC, and may not simply dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In so doing the ALJ must "say enough to enable review of whether [she] considered

9

the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and her conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). The ALJ assessed an RFC limiting Douglas to light work with the following additional limitations:

> [o]ccasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; never climbing ladders, ropes, or scaffolds; never working around unprotected heights or unprotected dangerous moving machinery; performing simple, routine, and repetitive tasks; making simple, work-related decisions; never performing work requiring a fast production rate pace; adapting to routine workplace changes; never performing telephone work or work requiring frequent or prolonged verbal communication; and never operating a motorized vehicle.

(A.R. 881.)

Douglas says the ALJ failed to connect the dots between the moderate CPP limitations she found he experienced and his mental RFC, pointing out that generic limitations to simple or unskilled work with no fast pace or production requirements may not accommodate moderate CPP limitations. (R. 17, Pl.'s Mem. at 7-8 (citing among others *Lothridge v. Saul*, 984 F.3d 1227 (7th Cir. 2021), and *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021)).) The government responds that any error in the RFC assessment is harmless because Douglas fails to assert required limitations that are not accounted for in the RFC. (R. 21, Govt.'s Resp. at 5-7); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding any error in RFC assessment harmless because "[i]t is unclear what kinds of work restrictions might address [claimant's] limitations" in CPP "because he hypothesizes none," and presents "no evidence that [CPP] deficits keep him from performing simple, routine, and repetitive tasks"). The court agrees. To be sure, Douglas's assertions appear to be that he needs "cues to remain on task,"

(R. 17, Pl.'s Mem. at 10), and is "unable to sustain work-related activities," (R. 22, Pl.'s Reply at 5). However, this court already found support "lacking for an off-task limitation," *Douglas G.*, 2021 WL 3849637, at *6, and as discussed *supra*, the ALJ did not err in rejecting Douglas's claimed need for reminders. Douglas points to nothing that demands a different result, and no medical opinion calls for such limitations. *See Best v. Berryhill*, 730 Fed. Appx. 380, 382 (7th Cir. 2018) (finding no error where "no doctor's opinion . . . indicated greater limitations" than did the ALJ (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Further, and as the ALJ found persuasive, the state agency psychologists opined that Douglas could "maintain the concentration and persistence necessary to carry out simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment," would have "no difficulty attending work regularly" or significant interference with his ability to complete typical work tasks and would "require no special supervision." (A.R. 894-95 (citing id. at 86, 101, 121-22 & 140-41).) Even Douglas's sister-in-law acknowledged Douglas's concentration depends on the difficulty of the task. (Id. at 303 & 353.)

That said, Douglas's complaints about his blackouts have merit. The ALJ assessed inconsistent evidence concerning Douglas's blackouts, including his testimony that he had gone to the ER for the same yet did not experience them often, that there is no record of such visit, and that his medical records in and around that same time were all negative for dizziness and fainting. (Id. at 877.) The ALJ ultimately credited and purported to specifically account for Douglas's blackouts in the RFC by prohibiting him from operating a motorized vehicle. (Id. at 895.) But as

11

Douglas points out, the ALJ does not explain why she still found Douglas capable of being "on his feet for most of the workday while lifting and carrying objects." (R. 17 Pl.'s Mem. at 10-11 (citing A.R. 895).) Douglas notes that if he is limited to sedentary work and is deemed to have no transferable skills, his education and past work direct a disability finding as of March 5, 2018—his 50th birthday. (Id. at 11 (citing 29 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14).) The government offers no response. On remand, the ALJ must explain whether and how Douglas's blackouts impact other aspects of his RFC beyond his ability to operate a motorized vehicle.

## Conclusion

For the foregoing reasons, Douglas's remand request is granted, and this matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate**